UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                             Crim. No. 14-72 (PJS/JSM)

    Plaintiff,                    AMENDED REPORT AND RECOMMENDATION

v.

ANDRE MAURICE COX,
a/k/a Anthony White,

    Defendant.

The above matter came before the undersigned on defendant Andre Maurice Cox, a/k/a Anthony White's Motion to Suppress Evidence [Docket No. 25] and Motion to Suppress Statements [Docket No. 26]. Surya Saxena, Esq. Assistant U.S. Attorney appeared on behalf of the Government. James S. Becker, Esq. appeared on behalf of defendant who was personally present.

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

**I.   DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [Docket No. 25]**

Defendant moved to suppress physical evidence based on an alleged illegal traffic stop. [Docket No. 25]. This Court conducted an evidentiary hearing on the motion, received evidence, and took testimony from Officer Travis Williams, who conducted the January 24, 2014, traffic stop and search at issue. At the evidentiary hearing, defendant waived any direct challenge to the search of his vehicle, which led to the discovery of a firearm and defendant's subsequent indictment on a charge of being a felon in possession of a firearm. Indictment [Docket No. 9].

Defendant contended (1) the warrantless stop was not supported by reasonable, articulable suspicion; and (2) any evidence obtained through the subsequent search of his vehicle should be suppressed as fruits of the poisonous tree. Defendant's Memorandum in Support of Pretrial Motions ("Def's Mem."), p. 1 [Docket No. 38]

## II.     DISCUSSION

### A.     Legal Standards

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "A traffic stop constitutes a seizure under the Fourth Amendment." United States v. Peralez, 526 F.3d 1115, 1119 (8th Cir. 2008) (citing Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). "[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). "Any traffic violation, however minor, provides probable cause for a traffic stop." United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir.1994) (en banc). "This is true even if a valid traffic stop is a pretext for another investigation." United States v. Linkous, 285 F.3d 716, 719 (8th Cir. 2002) (citing Whren, 517 U.S. at 812-813). Further, "even if [the deputy was] mistaken about the existence of a violation, 'the validity of a stop depends on whether the officer's actions were objectively reasonable in the circumstances.'" United States v. Martin, 411 F.3d 998, 1001 (8th Cir. 2005) (quoting United States v. Smart, 393 F.3d 767, 770 (8th Cir. 2005)).

Probable cause to support a traffic stop exists when a reasonable officer, confronted with the facts known to the officer at the time of the traffic stop, could have believed that there was a fair probability that a violation of law had occurred. See United States v. Andrews, 454 F.3d 919, 921 (8th Cir. 2006) (citations omitted). "The critical inquiry in a probable cause determination in the traffic stop context is what the stopping officer observed <u>before</u> pulling over a motorist." United States v. $45,000.00 in U.S. Currency, --F.3d--, No. 1301973, 2014 WL 1465550 (8th Cir. April 16, 2014) (emphasis in original) (citing United States v. Rivera, 370 F.3d 730, 733 (8th Cir. 2004) ("Probable cause for an arrest exists if, <u>at the moment the arrest was made</u>, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that an offense has been committed." (emphasis added)).

"When a defendant contends that the government obtained evidence in violation of the Constitution, the government must prove by a preponderance of the evidence that the challenged evidence is admissible." United States v. Foster, 752 F. Supp.2d 1060, 1063 (D. Minn. 2010) (citing Colorado v. Connelly, 479 U.S. 157, 168 (1986)) (other citations omitted).

With these standards in mind, the Court turns to defendant's motion.

**B.     Hearing Testimony**

Minneapolis police officer Travis Williams testified that he was a patrol officer with seven-and-a-half years of experience, the majority of it in the 4th Precinct, which encompasses North Minneapolis. Officer Williams testified that on the evening of January 24, 2014, at about 10:30 p.m., he was on patrol when he observed defendant's

3

vehicle traveling at an excessive speed given the road conditions, which were icy and snow-covered. Officer Williams had been trained to visually estimate vehicle speeds and testified that defendant was driving over the 30 miles per hour speed limit and was traveling "way too fast." Officer Williams saw defendant fail to stop at a stop sign at the intersection of Oliver Avenue North and Plymouth Avenue North in Minneapolis. Officer Williams testified that it was "obvious" to him that defendant failed to stop at the stop sign and that he had "no doubt" that defendant failed to stop. Officer Williams' squad video was activated when he activated his squad lights, which was after he observed defendant fail to stop. As a result, defendant's failure to stop was not recorded by the squad video.

Officer Williams followed defendant's vehicle and eventually pulled behind it. The squad video (Gov't Ex. 1) shows that almost immediately after defendant pulled to the side of the road, he exited the vehicle. Officer Williams instructed him to stop and remain in the vehicle, but defendant fled and Williams chased defendant on foot. Defendant was taken into custody for fleeing a police officer. By this time, Officer Williams had called for back-up. Officer Williams testified that when defendant fled, defendant left the keys in the ignition and his vehicle was still running. The squad video showed Officer Williams and other officers pointing a flashlight into the vehicle. Officer Williams searched the vehicle and recovered the firearm.

### C.     Defendant's Motion to Suppress and the Government's Response

Defendant challenged Officer William's credibility on the ground that Officer Williams' testimony at the evidentiary hearing was inconsistent with his written report. Def's Mem., pp. 4-7. For example, Officer Williams testified that he observed

defendant's vehicle fail to stop at a stop sign at the intersection of Oliver Avenue North and Plymouth Avenue North, but the public portion of his written report referenced defendant's failure to stop at stop signs. Defendant also challenged Officer Williams' testimony regarding the activation of his squad video. According to defendant, the squad video shows that the video system was activated by Officer Williams braking, and not, as he testified, by the activation of his squad lights. According to defendant, these inconsistencies eroded Officer William's credibility to the point where the Court should disregard his testimony regarding defendant's alleged traffic violations. Id., pp. 4-7.

The Government argued that Officer Williams' credibility was unaffected by minor typographical errors in the short, public summary section of his police report; errors which were not present in the long-form supplemental portion of his report that accurately described his observations.[1] Government's Response to Defendant's Memorandum in Support of Motion to Suppress ("Govt's Mem."), pp. 2, 4-5 [Docket No. 39]. Further, defendant simply misunderstood Officer Williams' testimony regarding the activation of the squad video. Id., p. 3. Officer Williams testified that the squad video was activated when he turned on his flashing lights, and the video automatically captures a twenty-second period before the activation. Id., p. 3-4.

The Government additionally argued that even if the Court concluded that the traffic stop was invalid, defendant's flight from the scene was an independent criminal act in violation of Minn. Stat. §609.487, subd. 6. Accordingly, the fruits of the search of the vehicle were attributable to defendant's flight, not the traffic stop. Id., p. 5 (citing United States v. Smith, Civ. No. 12-17 (DSD/AJB), 2013 WL 5999361, at *4 (D. Minn.

---

[1] Neither defendant nor the Government offered the police report into evidence.

Nov. 12, 2013) ("Suppression of evidence seized from the Dodge Charger is not required under circumstances in which the driver fled from the scene of a lawful traffic stop, led police on a high-speed chase lasting approximately 5 minutes, was involuntarily brought to a stop by use a police maneuver, ran from the vehicle and escaped by jumping a fence and running across lanes of freeway traffic, and did not return to the vehicle. The driver abandoned the vehicle and thereby sacrificed any expectation of privacy in the vehicle which might have been implicated under the Fourth Amendment. United States v. Smith, 648 F.3d 654, 660 (8th Cir. 2011). In addition, the act of fleeing the initial stop constituted grounds for defendant's arrest which was attenuated from the earlier stop, and the evidence seized from the vehicle was not a fruit of the original stop and was not otherwise legally attributable to circumstances of the original stop. United States v. Dawdy, 46 F.3d 1427, 1431 (8th Cir.1995) (a defendant's response to even an invalid arrest or Terry stop may constitute independent grounds for an arrest)").

Further, even if the stop was invalid, defendant abandoned the vehicle by running away and, therefore, had no reasonable expectation of privacy in the vehicle or its contents. Id., p. 6 (citing Smith, 648 F.3d at 660; United States v. Walton, 538 F.2d 1348, 1351, 1354 (8th Cir. 1976); Smith, 2013 WL 5999361, at *4)).

This Court finds Officer William's unrebutted testimony clear and credible regarding his observation of defendant's moving violations. First, Officer Williams testified and the squad video showed that the streets on the evening of the stop were snow-covered. Second, no evidence was presented that called into question Officer Williams' testimony that defendant was driving at an excessive rate of speed given the

road conditions. Similarly, the Court found Officer Williams' testimony regarding defendant's failure to stop at a stop sign to be credible. Significantly, there was no evidence to rebut Officer Williams' version of events.

The Court rejects as meritless defendant's argument that Officer William's testimony was not credible because there were typographical errors in his report that conflicted with his testimony. Officer Williams credibly explained that the errors in the public summary of his police report (which were not carried forward into the long-form supplemental portion of his report) were likely based on his own dictation errors ("a slip of the tongue") or his own choppy speech. These typographical errors do not call into question Officer Williams' testimony regarding the stop. In any event, neither the typographical errors nor the pointless dispute about whether the squad video was activated by Officer Williams' braking or by activating his squad lights affected Officer Williams' credibility. By the time the squad video was activated, the traffic violations had occurred. At any rate, squad video or not, the Court would have reached the same conclusion regarding the propriety of the stop in the absence of any video at all.

In addition, even if this Court had concluded that the stop was invalid, defendant's actions in fleeing scene of the stop and leaving the keys in the car while the car was running constituted abandonment. "A warrantless search of abandoned property does not implicate the Fourth Amendment, [because] any expectation of privacy in the item search is forfeited upon its abandonment." Smith, 648 F.3d at 660. In Smith, a suspected bank robber attempted to evade police by driving through a Taco Bell drive through lane. When police blocked the lane, the driver exited the vehicle and fled on foot, leaving his vehicle running and the door open. Id., at 657. Officers

searched the vehicle and discovered $72,900 in cash and a handgun. Id. The defendant was charged with being a felon in possession of a firearm. Id. Defendant challenged the constitutionality the stop, claiming the district court erred in finding that he abandoned his vehicle. Id. at 660. The Eighth Circuit disagreed, affirming the district court's conclusion that "when [defendant] left the car open, with the keys in the ignition, the motor running, in a public area" and then fled on foot, he abandoned the vehicle and relinquished any legitimate expectation of privacy. Id.; see also Walton, 538 F.2d at 1351, 1354 (warrantless search of suspected bank robber's vehicle, left parked on a public street and unlocked with the windows rolled down after suspect fled on foot did not violate the Fourth Amendment); United States v. Hopkins --Fed. App'x--, 2014 WL 1613909, at *2 (4th Cir. April 23, 2014) (defendant who fled from police on foot after crashing his vehicle into a tree and left the vehicle running and the doors open had no privacy interest in the car or its contents); United States v. Vasquez, 635 F.3d 889, 892, 894 (7th Cir. 2011) (defendant had no expectation of privacy in his vehicle after fleeing from police and abandoning his vehicle in a Wal–Mart parking lot before fleeing on foot); United States v. Edwards, 441 F.2d 749, 751 (5th Cir. 1971) ("Defendant's right to Fourth Amendment protection came to an end when he abandoned his car to the police, on a public highway, with engine running, keys in the ignition, lights on, and fled on foot. At that point defendant could have no reasonable expectation of privacy with respect to his automobile.")

Lastly, defendant was arrested for fleeing a police officer, which provides an independent grounds for the search and seizure. See United States v. Loveland, Civ. No. 07-438 (JRT/JJG), 2008 WL 3200648, at *4 (D. Minn. Aug. 5, 2008) ("Where a

person is unlawfully stopped or arrested, but that person commits other conduct that supplies probable cause to arrest that person for another offense, that intervening event will purge the unlawful stop and subsequent evidence is admissible." ) (citing Dawdy, 46 F.3d 1427, 1430-31 (8th Cir.1995)). "So if a person flees from an unlawful stop, the crime of fleeing from the officer supplies probable cause to arrest that person, who forfeits the right to challenge the prior unlawful stop." Id. (citing United States v. Sledge, 460 F.3d 963, 966-67 (8th Cir. 2006)).

### III.   DEFENDANT'S MOTION TO SUPPRESS STATEMENTS [Docket No. 26]

Defendant moved to suppress statements, although he did not indicate what statements he was attempting to suppress. Defendant's Motion to Suppress Statements [Docket No. 26]. The Government argued that the motion should be denied because defendant failed to identify what statements he was seeking to suppress, and the basis for any such request. United States' Omnibus Response to Defendant's Pretrial Motions, pp. 10-11 [Docket No. 27].

At the motions hearing on April 24, 2014, defendant's counsel indicated that he would only proceed on this motion if the Government planned to use defendant's statements in its case-in-chief. The Government's counsel stated that the Government was not using the statements in the Government's case-in-chief. Based on the representations of counsel this Court recommends denying plaintiff's Motion to Suppress Statements as moot.

### IV.   RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.   Defendant's Motion to Suppress Evidence [Docket No. 25] be **DENIED.**

  2. Defendant's Motion to Suppress Statements [Docket No. 26] be **DENIED as Moot** based on the representations of plaintiff's and defendant's counsel at the motions hearing.


Dated: May 19, 2014          *Janie S. Mayeron*
                  JANIE S. MAYERON
                  United States Magistrate Judge


**NOTICE**

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **June 2, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals. Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before